# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) |  |
| YSAURO R. MUNOZ, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 05-2472 (CKK) |
|  | ) | ECF |
| GORDON R. ENGLAND, | ) |  |
| SECRETARY OF THE NAVY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

## DEFENDANT'S  MOTION TO DISMISS AMENDED COMPLAINT
## OR, IN THE ALTERNATIVE, TO TRANSFER

Defendant Gordon R. England, Secretary of the Navy, respectfully renews his motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1), (3) and (6) for lack of subject matter jurisdiction (Count One), failure to state a claim (Count Two) and improper venue (both).  Alternatively, Defendant respectfully moves to transfer this case to either the United States Court of Federal Claims or to the United States District Court for District of Hawaii.  28 U.S.C. § 1404(a).  In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Dated: April 17, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
YSAURO R. MUNOZ,                    )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )     Civil Action No. 05-2472 (CKK)
                                    )     ECF
GORDON R. ENGLAND,                  )
  SECRETARY OF THE NAVY,            )
                                    )
         Defendant.                 )
_____)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, TO TRANSFER**

## I. <u>INTRODUCTION</u>

In response to Defendant's initial motion to dismiss, Plaintiff filed an amended complaint

attempting, in part, to recast his essential allegations into a case over which this Court might have

jurisdiction. Plaintiff's effort is in vain because he cannot disguise the essential nature of this

case which is an action for breach of an administrative settlement agreement of Plaintiff's

discrimination complaints. Notably, Plaintiff's Amended Complaint does not indicate that he is

seeking less than $10,000 in damages. Plaintiff's addition of a separate count alleging the same

acts which constitute the breach as retaliation for his protected EEO activity also fails to set forth

a valid claim in this Court. <u>See</u> Am. Compl. ¶¶ 34-37. Moreover, Plaintiff's new reliance on 28

U.S.C. § 1391 to establish venue is unavailing, and venue remains improper in the District of

Columbia. Accordingly, Defendant's motion to dismiss or transfer this case should be granted.

Plaintiff, a civilian employee of the United States Navy who works in Japan, brings this action alleging that Defendant breached a Settlement Agreement entered into on February 28, 2002, which settled his administrative complaints of race and age discrimination. Amended Complaint, passim. Based on the controlling law in this Circuit, it is plain that this Court lacks jurisdiction over a claim for breach of a settlement agreement where the amount being sought is greater than $10,000, because 28 U.S.C. § 1361 and 28 U.S.C. § 1491(a)(1) confer exclusive jurisdiction on the Court of Federal Claims. Furthermore, even if this case could be brought under one of the discrimination statutes, Title VII of the 1964 Civil Rights Act or the Age Discrimination in Employment Act, as amended, venue would be improper in this Court because the District of Columbia is not where Plaintiff worked, not where any of the allegedly discriminatory actions took place, not where the relevant employment records are maintained, and not where Plaintiff would have worked but for any of the supposed discrimination. Consequently, this Court should dismiss Plaintiff's lawsuit or, alternatively, transfer this action to the Court of Federal Claims or to the District of Hawaii. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1404(a) .

## II.  **BACKGROUND**

At all times relevant to the allegations contained in the instant lawsuit, the United States Department of the Navy has employed the Plaintiff as an Engineering Technician, GS-12. Am. Compl. ¶ 2. Plaintiff is stationed overseas at the Navy's Ship Repair Facility in Yokosuka, Japan. Complaint, ¶ 2. According to records in Plaintiff's Official Personnel File, Plaintiff has been employed in Japan by the Ship Repair Facility since February 1, 1987. Am. Compl. ¶ 8; see Declaration of Jeffrey Wataoka ("Wataoka Dec."), ¶ 7 (attached as Exhibit 1).

- 2 -

On February 28, 2002, Plaintiff and Defendant entered into a Settlement Agreement which provided that plaintiff would withdraw specified EEO complaints (Agency Nos. 01-62758-003 and 02-62758-004) in exchange for the Navy providing him a "Letter of Regret" and unspecified, but career-enhancing, training within one year of the date of the Settlement Agreement.  Am. Compl. ¶ 14; <u>see</u> February 28, 2002 Settlement Agreement (attached as Exhibit 2).  The Settlement Agreement itself contains a procedure for resolving disputes.  <u>See</u> Exhibit 2 at pages 2-3.[1]  After Plaintiff complains in writing and the Navy has an opportunity to respond, these procedures culminate in a decision by the Equal Employment Opportunity Commission ("EEOC")'s Office of Federal Operations.  <u>Id</u>.

By letter dated April 12, 2002, Plaintiff notified the Navy of his belief that it had breached the Settlement Agreement by refusing to provide him with some requested training.  Am. Compl. ¶ 15.  On June 13, 2002, the Navy determined that it had not breeched the Settlement Agreement because the agreement itself did not identify any particular training and the one-year time period had barely begun when Plaintiff claimed breach.  <u>Id</u>. ¶ 17.  Following the provisions of the Settlement Agreement for dispute resolution, Plaintiff timely filed an appeal with the EEOC on July 17, 2002, and the EEOC assigned the appeal a case number, specifically No. 01A24123.  Complaint, ¶ 18.

---

[1]  The Settlement Agreement requires Complainant to raise any claimed violation or breach of the Settlement Agreement in writing with the Commander of the Ship Repair Facility.  Any such complaint is "processed as described in Appendix B to Department of the Navy Civilian Personnel Instruction 12713 and in accordance with the provisions of 29 CFR 1614.504."  Exhibit 2 at 2.  If Complainant fails to receive a response within 30 days or is unsatisfied with the response, he must timely appeal to the Office of Federal Operations at the Equal Employment Opportunity Commission "for a determination as to whether the agency has complied with the terms of this Settlement Agreement."  <u>Id</u>. at 2-3.

On February 28, 2003, Plaintiff filed a second complaint alleging non-compliance with the Settlement Agreement.  Am. Compl. ¶ 20.  He alleged that Defendant breached the Settlement Agreement when it denied his requests for career enhancement training, specifically his requests for training on the vertical launch systems.  Id.

On September 4, 2003, the Navy determined that it had complied with the Settlement Agreement because its training records indicated that Plaintiff had received training classes which the Navy deemed career-enhancing in full compliance with the Settlement Agreement.  Am. Compl. ¶¶ 22-23.  The Navy noted that the Settlement Agreement did not identify any specific classes.  Id. ¶ 23.  On October 8, 2003, Plaintiff appealed this determination to the EEOC.  Id. ¶ 24.

Subsequently, the Navy agreed to investigate Plaintiff's second complaint of non-compliance with the Settlement Agreement.  Id. ¶ 25.  On March 29, 2004, the Navy provided a report of the second investigation to Plaintiff.  Id. ¶ 26.  On August 19, 2004, Plaintiff filed an appeal to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO").  Id. ¶ 28.  Plaintiff requested consolidation of his breach of settlement claims and designation of a forum for an opportunity to be heard.  Id.

On September 21, 2005, the EEOC issued a final decision denying relief to Plaintiff on both of his claims of breach of the Settlement Agreement.  Id. ¶ 29.  Plaintiff or his representative received the decision on September 26, 2005.  Id. ¶ 30.  On December 27, 2005, Plaintiff filed this case concerning the same events.  See Complaint [Docket Entry No. 1].  The Amended Complaint filed on March 31, 2006 contains two causes of action: (1) breach of the Settlement

Agreement (Am. Compl. ¶¶ 31-33); (2) retaliation in violation of Title VII and the Age

Discrimination in Employment Action (Am. Compl. ¶¶ 34-37).

## III.  ARGUMENT

### A.    Standard of Review

"In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual

allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v.

Capitol Police Board, 120 F.Supp.2d 78, 81 (D.D.C. 2000) (citations omitted), aff'd, 22

Fed.Appx. 14 (D.C. Cir. 2001) (unpublished).  "The court is not required, however, to accept

inferences unsupported by the facts alleged or legal conclusions that are cast as factual

allegations." Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir.

2003), cert. denied, 543 U.S. 809 (2004).  In addition, "[on] a motion to dismiss pursuant to Rule

12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a

preponderance of the evidence." Thompson, 120 F.Supp.2d at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) in either of two ways.  First, the court may determine the motion based solely on the

complaint.  Herbert v. National Acad. of Sciences , 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  See id.; Rann, 154 F.Supp.2d at 64.  In other words, the Court may

consider facts outside of the pleadings (without converting the motion to one for summary

judgment) when adjudicating a motion to dismiss for lack of subject matter jurisdiction or

- 5 -

improper venue.  See, e.g., Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Herbert v. National

Academy of Sciences, 974 F.2d 192, 197-98 (D.C. Cir. 1992); Bonterra America, Inc. v.

Bestmann, 907 F. Supp. 4, 5 n.1 (D.D.C. 1995); see also  R.A. Argueta v. Banco Mexicana, S.A.,

87 F.3d 320, 324 (9th Cir. 1996).

A motion to dismiss is subject to similar standards.  In assessing a motion to dismiss

under Rule 12(b)(6), plaintiff's factual  allegations must be presumed true and should be liberally

construed in his favor.  See Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979);

Alexander v. FBI, 971 F. Supp. 603, 607 (D.D.C. 1997).  Plaintiff must be given every favorable

inference that may be drawn from his allegations of fact.  See Scheuer v. Rhodes, 416 U.S. 232,

236 (1974). The amended complaint should be dismissed if it appears beyond doubt that no set of

facts proffered in support of plaintiff's claim would entitle him to relief.  See Conley v. Gibson,

355 U.S. 41, 45-46 (1957); Haynesworth v. Miller, 820  F.2d 1245, 1254 (D.C. Cir.1987).

However, "the Court need not accept inferences dr awn by the plaintiff if those inferences are

unsupported by the facts alleged in th e complaint, nor must the Court accept the plaintiff's legal

conclusions."  Akintomide v. United States, 99- MS- 0055  (PLF), 2000 WL 1693739, at *1

(D.D.C. Oct . 31, 2000) (citing National Treasur y Employees Union v. United States, 1 01 F.3d

1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16  F.3d 1271, 1276 (D.C.

Cir. 1994)).

**B.    Count One Should Be Dismissed Because The Court Lacks Subject Matter Jurisdiction Over Claims Involving Breach of the Settlement Agreement**

Courts are obliged to consider jurisdictional issues at every stage of litigation.  E.g.,

Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 627 (1974); Auction Co. of

America v. FDIC, 141 F.3d 1198, 1200  (D.C. Cir. 1998).  In this case, Count One of the

Amended Complaint seeks relief for "a substantial and material breach and violation of the

Settlement Agreement signed by Plaintiff and the Navy."  Am. Compl. ¶ 32.

This claim plainly sounds in contract.  Id.

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over

contract claims against the United States and its agencies where the damages sought are in excess

of $10,000.  See 28 U.S.C. § 1491(a)(1).  This Court routinely and uniformly treats

administrative settlements of discrimination claims as contracts.  See, e.g., Saksenasingh v.

Secretary of Education, 126 F.3d 347, 348-49 (D.C. Cir. 1997); Bowden v. United States, 106

F.3d 433, 436 (D.C. Cir. 1997).  The D.C. Circuit has held that actions for breach of such

contracts belong in the Court of Federal Claims where the amount sought exceeds $10,000.

Hansson v. Norton, 411 F.3d 231, 232-33, 235 (D.C. Cir. 2005) (dispute over the reasonableness

of an award of attorney's fees where the Resolution Agreement provided that plaintiff would

receive reasonable attorney's fees and costs where the agency awarded approximately one quarter

of the fees sought).  The Court reasoned that such claims "neither requir[ed] an interpretation of

Title VII with respect to [the] discrimination complaint nor [sought] equitable relief under Title

VII."  Id. at 237; see Brown v. United States of America, 389 F.3d 1296, 1297 (D.C. Cir. 2004)

(affirming dismissal of claim alleging breach of administrative settlement of EEO charges

"because this contract question arises in a suit against the United States for more than $10,000 in

damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.").[2]

Although the Amended Complaint does not specify the amount of the damages that Plaintiff seeks to recover, its prayer for relief includes:  (1) promotion to grade GS-13 with step increases retroactive to February 2003; (2) back pay, including interest and restoration of all benefits; (3) a "two year tour renewal and removal from Priority Placement Program;" and (4) unspecified compensatory damages, including emotion pain and suffering and loss of reputation. Am. Complaint, Relief Requested ¶¶ 3, 4, 5, 9.  Because it appears likely from these descriptions that Plaintiff seeks more than $10,000, this Court lacks jurisdiction over this case.  See 28 U.S.C. § 1346(a)(2).  That certain other elements of the relief sought by Plaintiff could be construed to be equitable does not supply jurisdiction in this Court where none otherwise exists.[3] See Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) ("the combination of a claim for equitable relief under Title VII and a related claim for breach of contract does not give the district court jurisdiction over the contract claim that, if brought separately, would be exclusively in the Court of Federal Claims under 28 U.S.C. §§ 1346(a)(2), 1491(a)(1).").  By statute, the Court of Federal Claims may grant equitable relief under 28 U.S.C. 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and

---

[2]  The D.C. Circuit emphasized that "[i]n order for Brown either to pursue remedies for breach of contract or to seek relief under Title VII, she must first prove the Department breached the settlement agreement."  Brown, 389 F.3d at 1297.

[3]  In addition to monetary relief, Plaintiff also requests other relief under the Settlement Agreement, including provision of Vertical Launch System Training.  Complaint, ¶¶ 23-24; see also Complaint "Relief Requested."

collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.").

In order to determine if the Court of Federal Claims possessed jurisdiction over a contract claim, Hansson relied substantially on the "jurisdictional line" drawn between review of substantive issues (extent and existence of government liability)  and enforcement of claimant's rights embodied in an express contract.  Hansson, 411 F.3d at 236-37, citing Massie v. United States, 166 F.3d 1184, 1189 (Fed. Cir. 1999).  The latter situation (contract enforcement) favors jurisdiction for the Court of Federal Claims.  Hansson, 411 F.3d at 236-37.  The focus of the Amended Complaint is an express contract (the Settlement Agreement) which granted the Plaintiff certain rights (unspecified career enhancing training) which he alleges that he did not receive within the time permitted because his request for a specific form of training (on Vertical Launch System) was denied.  Importantly, Plaintiff seeks primarily money and does not seek rescission of the Settlement Agreement and re-opening of the underlying discrimination complaints.  Thus, the instant case in general and Count One in particular involves contract enforcement and so the Court of Federal Claims should exercise jurisdiction over this case.

Like the Plaintiffs in Brown and Hansson, Plaintiff here brings a contract claim.  Plaintiff seeks relief for an alleged refusal to comply with the Settlement Agreement (a contract).  If the amount in controversy exceeds $10,000 then this Court lacks jurisdiction over Plaintiff's claims. This Court should dismiss Count One for lack of jurisdiction.  Fed. R. Civ. P. 12(b)(1).[4]

_____

[4] If, on the other hand, Plaintiff seeks damages of less than $10,000, the Court should still transfer this case to the United States District Court for the District of Hawaii for the reasons set forth below.

**C.     Plaintiff Has Not Separately Exhausted The Retaliation Claims In Count Two of the Amended Complaint**

Plaintiff's Amended Complaint identifies the denial of his request for Vertical Launch Training as an act of unlawful retaliation.  Am. Compl. ¶¶ 15, 36.  Although the Amended Complaint fails to identify when Plaintiff made his request and the Navy denied it, paragraph 15 makes it clear that it was sometime prior to April 12, 2002 when Plaintiff first notified the Navy in writing that he considered the denial to be a breach of the Settlement Agreement.  Id. ¶ 15.  Because he failed to file a claim for retaliation within 45 days of the denial of the training, Plaintiff failed to exhaust his claim and Count Two should also be dismissed.  Fed. R. Civ. P. 12(b)(6).

To preserve a claim of unlawful discrimination in connection with employment, federal employees are required to exhaust their administrative remedies through procedures contained in federal regulations.  It is well settled that failure to follow the procedures requires dismissal because the time limits, which serve as the basis for the limited waiver of sovereign immunity in section 2000e-16(c), must be strictly construed.  Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976); Irwin v. Department of Veterans Affairs, 498 U.S. 89, 94 (1990).  In fact, courts have strictly enforced the time deadlines throughout the complaint process under Title VII.  Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) ("A plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience").

Federal employees may file a civil action under Title VII concerning employment discrimination only after exhausting their administrative remedies before the concerned Federal agency for each discrete alleged discriminatory act.  42 U.S.C. § 2000e-16(c); National Passenger

R.R. Corp. v. Morgan, 536 U.S. 101 (2002).  Under rulemaking authority delegated by Title VII,

see 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the

administrative resolution of discrimination complaints, including a series of time limits for

seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions

to the Commission."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R.

Part 1614 (Federal Sector Equal Employment Opportunity).

Importantly, the EEOC's regulations generally provide that "aggrieved" employees who

allege they have been discriminated or retaliated against must first consult an agency EEO

counselor before filing a complaint of discrimination and must do so within 45 days of the

"matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Because compliance with the

administrative procedures and time lines is mandatory, "[c]omplainants must timely exhaust

these administrative remedies before bringing their claims to court."  Bowden, 106 F.3d at 437;

see also Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995)(holding that a plaintiff

must exhaust applicable administrative remedies and that a plaintiff cannot raise new allegations

or charges in court that were not brought in the prior administrative proceedings); Williams v.

Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to

initiation of a Title VII action").[5]

---

[5]  Because untimely exhaustion of administrative remedies is an affirmative defense, the
defendant bears the burden of pleading and proving it in the first instance.  Brown v. Marsh, 777
F.2d at 13.  Once the defendant meets its burden, the plaintiff then bears the burden of pleading and
proving facts supporting equitable avoidance of the defense.  Bayer v. United States Dep't of
Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992); Jarrell v. United States Postal Serv., 753 F.2d 1088,
1091-92 (D.C. Cir. 1985); cf. 29 C.F.R. § 1613.214(a)(4) (1991) (recodified as amended at 29 C.F.R.
§ 1614.204(c)).

As the U.S. Supreme Court emphasized in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  536 U.S. at 108, quoting <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 825 (1980).  In <u>Morgan</u>, the U.S. Supreme Court expressly rejected the "continuing violation" theory, which some circuits, including the D.C. Circuit, <u>see</u> <u>Palmer v. Kelly</u>, 17 F.3d 1490, 1495 (D.C. Cir. 1994), previously had employed to allow claimants to litigate untimely discrimination claims if those claims were sufficiently related to timely ones.  <u>Morgan</u>, 536 U.S. at 105.  The Supreme Court specifically held that:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the [applicable] time period after the discrete act occurred.

<u>Id.</u> at 113.  The Court described "discrete acts" as including acts "such as termination, failure to promote, denial of transfer, or refusal to hire."  <u>Id.</u>  Thus, under <u>Morgan</u>, *each* incident of alleged retaliation "constitutes a separate actionable 'unlawful employment practice,'" for which a timely administrative complaint must be filed.  <u>Id.</u>  Failure to file a separate complaint concerning each such act constitutes a failure to exhaust administrative remedies.  <u>Id.</u>

Here, only Plaintiff's first-filed complaint could have been within 45 days of the Navy's denial of his request for Vertical Launch Training.  That complaint, which is attached hereto as Exhibit 3, nowhere alleges that there was any unlawful retaliation in connection with the Navy's decision relating to Plaintiff's request for Vertical Launch Training.  The administrative complaint is strictly limited to breach of the February 28, 2002 Settlement Agreement.  As a result, the Navy never investigated whether the denial of Vertical Launch Training was motivated

by an unlawfully retaliatory animus.  See DeMedina v. Reinhardt, 444 F. Supp. 573, 579 (D.D.C.

1978) (emphasizing that the principle of allowing litigation of claims reasonably related to those

in the administrative complaint must not be applied so broadly that complainants are effectively

allowed to bypass the administrative process and quoting Brown v. General Servs. Adminis., 425

U.S. 820, 833) (1976).  Because Plaintiff failed to exhaust his administrative remedies properly,

Count Two should be dismissed.  Williamson v. Shalala, 992 F. Supp. 454, 457 (D.D.C.1998)

("non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in

court"), aff'd, 1998 WL 545420 (D.C. Cir. July 20, 1998), cert. denied, 525 U.S. 915 (1998).

 Moreover, Plaintiff's apparent disagreement over the value of the training he was

provided to his career or his opinion that Vertical Launch Training would be more career-

enhancing is insufficient to constitute an adverse action as required for his retaliation claim.[6]

This kind of claim cannot be sustained because it is akin to the failure to give an employee

"desirable" or "important" work assignments which is not ordinarily an adverse action.  See

Bryant v. Brownlee, 265 F. Supp.2d 52, 61 (D.D.C. 2003) (plaintiff's allegation that she was

given unimportant work did not rise to the level of adverse employment action); Brown, 199 F.3d

at 457 ("mere idiosyncrasies of personal preference" not sufficient to state an injury).  While a

denial of training can rise to the level of an adverse employment action,[7] Plaintiff here admits

---

 [6]  To establish a prima facie case of retaliation a plaintiff must show: (1) that he engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.  Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)); see also Carney v. American Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998); Thomas v. National Football League Players Ass'n, 131 F.3d 198, 202 (D.C. Cir. 1997).

 [7]  See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1436 n.16 (11th Cir.1998); see also 42 U.S.C. § 2000e-2(d) (barring employers from discriminating in "admission to, or

that he was given weapons system training.  See Am. Compl. ¶ 16.  "Such decisions to deny or

grant training or to permit attendance at seminars clearly fall within the realm of the employer's

business judgment."  Vitt v. City of Cincinnati, 97 Fed. Appx. 634, 640 (6th Cir. 2004)

(plaintiff's discrimination claim regarding her employer's denial of her request to attend

computer training did not constitute adverse employment action because such training was not

necessary for her position); see also Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (

"Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel

department that reexamines an entity's business decisions.'(quoting  Dale v. Chicago Tribune

Co., 797 F.2d 458, 464 (7th Cir.1986)); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398,

406 (5th Cir. 1999) (plaintiff's claim of racial discrimination based on employer's refusal to train

on her on specialized filing software was not an adverse employment action covered by Title VII.

"[T]here was no reasonable basis on which conclude that a denial of such training so peripheral

to [Plaintiff's] main duties as a tax processor, would 'tend to' result in a change of employment

status, benefits, or responsibilities.").  "In the absence of a finding that plaintiff has suffered

adverse action, a retaliation claim fails as a matter of law."  Broderick v. Donaldson, 437 F.3d

1226, 1232 (D.C. Cir. 2006) (citing Berger v. Iron Workers Reinforced Rodmen Local 201, 843

F.2d 1395, 1424 (D.C. Cir. 1988)).  Accordingly, Count Two should be dismissed.

---

employment in, any program established to provide apprenticeship or other training").

**D.    Even If This Were a Valid Retaliation Case, It Would Still Be Subject to Dismissal For Improper Venue**

If the Court determines that all or any portion of Plaintiff's action is cognizable under Title VII or the ADEA because it amounts to a retaliation claim as opposed to one for breach of contract, this case should still be dismissed because venue is improper in the District of Columbia.

**1.    Venue Is Improper in the District of Columbia Under Title VII**

Venue in actions under 42 U.S.C. § 2000e-16 is governed by 42 U.S.C. § 2000e-5(f), which limits venue to the location of the acts, records, or positions on which the complaint is based, if the defendant can be found there.  Even if the Court has subject matter jurisdiction because the Complaint could be broadly construed as setting forth a retaliation action, which it should not, venue would be improper in the District of Columbia.  Although Plaintiff's Amended Complaint cites the jurisdictional provision of Title VII, he fails to satisfy it.  <u>See</u> Am.  Compl. ¶¶ 4, 7.

42 U.S.C. § 2000e-5(f)(3) provides:

[A Title VII] action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

Under this provision, a Title VII plaintiff must bring an employment discrimination complaint in one of the judicial districts identified under the first three options if the respondent can be "found" in that district.  Only if the respondent cannot be found in any such district may the

- 15 -

plaintiff file suit within the district in which the respondent has its principal office. See Shipkovitz v. Mosbacher, 1991 WL 251864 (D.D.C. 1991), aff'd, 1992 WL 394489 (D.C. Cir. 1992) (a plaintiff may file in district where defendant makes its headquarters if he cannot file where actions occurred, where records are kept, or where he would have worked); Mackey v. Sullivan, 55 Fair Empl. Prac. Cas. 1134 (D.D.C. 1991) (plaintiff may only bring suit in judicial district where agency has its principal office if none of the other venue requirements of Title VII can be met). As the Court has explained, Congress intended to limit venue in Title VII cases to those jurisdictions concerned with the alleged discrimination, and the venue determination must be based on a "commonsense appraisal" of how the events in question arose. Spencer v. Rumsfeld, 209 F.Supp.2d. 15, 17-19 (D.D.C. 2002); see also Stebbins v. State Farm Mutual Auto., Ins. Co., 413 F. 2d 1100, 1102 (D.C. Cir. 1969), cert. denied, 396 U.S. 895 (1969); Hayes v. RCA Service Co., 546 F. Supp. 661, 663 (D.D.C. 1982).

In the case at bar, although Plaintiff attempts to rely on the first, second, and fourth prongs of Title VII's venue provision, none of the three venue options described in 42 U.S.C. § 2000e-5(f)(3) permit venue in the District of Columbia.[8] Plaintiff fails to satisfy either the first or the second, and may not rely on the fourth because a proper venue is available in the District

---

[8] Paragraph 7 of the Amended Complaint conclusorily alleges that employment decisions affecting the Plaintiff were made in the District of Columbia and that records concerning Plaintiff's employment are maintained and administered there. Plaintiff further alleges that the Defendant, Secretary of the Navy, is also located in the District of Columbia. Plaintiff is incorrect and his unsubstantiated allegations do not have to be accepted as true, especially because other allegations in the Amended Complaint and documents it references concerning Plaintiff's employment all relate exclusively to Japan. Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 543 U.S. 809 (2004).

of Hawaii where Plaintiff's employment records are maintained, and as a result, the fourth, catch-all, provision of the statute does not apply.

The first venue option is "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). Plaintiff does not allege that any unlawful employment practices were committed in the District of Columbia. Plaintiff's Amended Complaint alleges the breach of a Settlement Agreement but he does not show any connection between the Settlement Agreement and the District of Columbia. Although Plaintiff alleges vaguely that "employment decisions affecting the Plaintiff were made in the District of Columbia," Am. Compl. ¶ 7, he fails to identify any specific employment decisions, unlawful or otherwise, that took place in the District of Columbia. Plaintiff's official personnel file does not indicate that he ever worked in the District of Columbia on any Navy activity. Wataoka Dec. at ¶ 7. Even assuming for the sake of argument that a few of the events at issue had occurred in the District of Columbia, that would not be sufficient to make venue proper in this Court. As this Court has stated: "Venue cannot lie in the District of Columbia when 'a substantial part, if not all, of the employment practices challenged in this action' took place outside Washington even though actions taken in the District of Columbia 'may have had an impact on plaintiff's situation.'" Mackey v. Sullivan, 55 Fair Empl. Prac. Cas. 1134 (D.D.C. 1991), citing Donnell v. National Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983). As the Court in Donnell advised, Title VII venue determinations should involve a common sense appraisal of the events having operative significance in the case. Id. Clearly, the focus of Plaintiff's Amended Complaint is the alleged breach of the Settlement Agreement which

occurred while he was stationed in Japan.  As such, the first venue provision does not supply an appropriate venue.

The third venue provision focusing on where Plaintiff would have worked but for the alleged unlawful discrimination likewise fails to identify an appropriate venue here because there is no allegation that Plaintiff would have worked in the District of Columbia.  However, the second venue provision, involving the location of Plaintiff's employment records, is satisfied because Plaintiff's records are maintained in Hawaii.  But the District of Columbia is not "the judicial district in which the employment records relevant to such [unlawful employment] practices are maintained and administered."  42 U.S.C. § 2000e-5(f)(3).  The Navy's Human Resources Service Center Pacific ("HRSC Pacific") provides personnel services to various Navy activities located in the Pacific theater of operations.  Wataoka Dec., ¶ 2.  HRSC Pacific maintains and administers the official personnel records concerning current and recently separated Navy employees who work for Naval activities that are serviced by HRSC Pacific.  Id. ¶ 3.  The Navy's Ship Repair Facility located in Yokosuka, Japan has employed Plaintiff in Japan since February 1, 1987.  Id. ¶ 7.  HRSC Pacific maintains and administers Plaintiff's OPF.  Id. ¶ 6.  At all relevant times, HRSC Pacific has been located in Honolulu, Hawaii, which lies in the District of Hawaii.  Id. ¶ 1.

Accordingly, Plaintiff cannot satisfy the venue provision in Title VII for bringing this case in this judicial district because the District of Columbia has no nexus with the alleged breach of the Settlement Agreement or alleged retaliation or even his underlying complaints of employment discrimination.  The statute identifies the United States District Court for the District of Hawaii as the appropriate venue.

### 2. Plaintiff Also Cannot Establish Proper Venue in D.C. Under the ADEA

Plaintiff also alleges that the retaliation he suffered was motivated by his protected activity under the Age Discrimination in Employment Act ("ADEA"). Unlike Title VII, the ADEA does not contain its own venue provision. Peary v. Tenet, 2004 U.S. Dist. LEXIS 27668, *5-6 (D.D.C. 2004) (ADEA actions against the U.S. government are governed by general venue provision, 28 U.S.C. § 1391(e), under which venue is proper where defendant resides, where cause of action arose, or where plaintiff resides); see Am. Compl. ¶ 7 (alleging venue under 28 U.S.C. § 1391(e)). The Secretary of the Navy is located at the Pentagon, which is in Virginia, not the District of Columbia. Monk v. Secretary of the Navy, 793 F.2d 364, 369 n.1 (D.C. Cir. 1986). It is plain from reading the Complaint and the Settlement Agreement that the causes of action arose in Japan. Amended Complaint; Settlement Agreement (attached as Exhibit 2 hereto). Plaintiff works in Japan (where he likely also resides) and maintains a home of record in California. See Wataoka Dec. ¶ 7. Accordingly, venue is improper in the District of Columbia under the general venue provision contained in 28 U.S.C. § 1391(e) as well.

### E. If Not Dismissed, This Case Should Be Transferred to the Court of Federal Claims or the District of Hawaii.

As an alternative to dismissal, the Court may transfer this case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 if the Court finds that it is properly classified as a contract action seeking damages in excess of $10,000. Because the matter in dispute between the parties appears to be the Navy's failure to provide a particular kind of training, or training which was sufficiently career-enhancing, and the Settlement Agreement does not provide for the Navy to pay damages in the event of a breach, it is not entirely clear that the Court of Federal Claims

- 19 -

would accept jurisdiction.  See Schnelle v. United States, 69 Fed. Cl. 463 (Ct. Cl. 2006) (holding Court of Federal Claims lacked jurisdiction over claim alleging breach of a settlement agreement which did not mandate money damages as a remedy for breach but reinstatement of the underlying discrimination complaints).  However, the governing law in this Circuit, Hansson v. Norton, 411 F.3d 231 (D.C. Cir. 2005), and Brown v. United States, 389 F.3d 1296 (D.C. Cir. 2004), make it clear that this Court presently lacks jurisdiction because Plaintiff must first demonstrate a material breach of the Settlement Agreement before any other remedy may be considered.

On the other hand, if the Court is unconvinced that this is a contract action, venue in the District of Columbia is certainly improper for a discrimination case as discussed above.  When an action is filed in an improper venue, the Court must either dismiss it outright or transfer it to another judicial district where proper venue exists.  As provided in 28 U.S.C. § 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong division or district *shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) (emphasis added).  The decision whether to transfer or dismiss a case that has been filed in an improper jurisdiction rests in the sound discretion of the district court. Stewart Organization, Inc., v. Ricoh Corp., 487 U.S. 22 (1988); Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983), cert. denied, 467 U.S. 1210 (1984) (citing Wright, Miller & Cooper, Federal Practice & Procedure § 3827 at 170 (1976)).  In Title VII cases, the district court has the same discretion to dismiss rather than transfer such a case.  Hayes, 546 F. Supp. at 665; Washington v. General Elec. Corp., 686 F. Supp. 361 (D.D.C. 1988).

As demonstrated above, Hawaii is an appropriate venue under Title VII's venue provision. On the other hand, Hawaii is not an appropriate venue under the general venue provision applicable to plaintiff's claim of retaliation in violation of the ADEA because the neither plaintiff nor defendant reside there and the cause of action did not arise in Hawaii. Because plaintiff alleges retaliation in violation of both statutes, however, the Court should apply the concept of pendent venue and give priority to Title VII's venue.

The concept of pendent venue is outlined in considerable detail in an article in The University of Chicago Law Review. See Corn, "Pendent Venue: A Doctrine in Search of a Theory," 68 U. CHI. L. REV. 931 (2001). As that article indicates:

> Title VII claims are perhaps among the most common claims in which pendent venue is invoked, possibly because Title VII has a restrictive venue provision, and many other federal statutes exist that cover similar acts. Examples of federal claims in which plaintiffs attempt to bring in a pendent Title VII claim include Section 1981 claims, Age Discrimination in Employment Act ("ADEA") claims, Equal Pay Act claims, and claims based on violations of Executive Orders. Courts have reached inconsistent conclusions on the many cases concerning Title VII and pendent venue. In fact, the two major approaches to pendent venue arise from Title VII cases.

> The first approach is commonly called the "principal cause of action" approach to pendent venue. It first makes its appearance in the case of [Laffey v. Northwest Airlines, Inc., 321 F. Supp. 1041, 1042 (D.D.C. 1971)]. Here, the plaintiff brought suit under both the Equal Pay Act and Title VII, alleging that female flight attendants were paid less for equivalent work. The district court declared that "what is essentially at issue ( ) is equal pay for equal work" and without further discussion held that the Equal Pay Act claim was the "principal cause of action." Since venue for the Equal Pay Act is governed by the general venue statute, and since venue was proper under this statute, the Title VII claim could be brought using pendent venue, the court held.

> The District Court for the District of Columbia reaffirmed this approach in [Hayes v RCA Service Co., 546 F. Supp. 661 (D.C.C. 1982)] although the two claims in that decision were a Title VII claim and a Section 1981 claim. Here, the court reasoned that since "Title VII is a statute which has been specifically fashioned by Congress to remedy employment discrimination," and since the

- 21 -

"allegations upon which the plaintiff is proceeding . . . involve employment discrimination," the principal cause of action was the Title VII claim. Thus, since venue for the Title VII claim was improper, it could not be heard in this district. Some other courts have also used the "principal cause of action" approach, although almost always the Title VII claim is found to be the principal claim.

For other courts, the analysis of Title VII claims more closely mirrors the "specialized venue" approach found in patent infringement claims, where venue must be proper for the cause of action that is covered by a narrow specialized venue provision. In [McCarthy v KFC Corp., 1984 WL 1048, 1984 U.S. Dist. LEXIS 14781 (N.D. Ill. 1984)] the plaintiff attempted to bring both a general venue claim and a pendent Title VII claim. The district court held that "an assertion of pendent venue over the Title VII claim would effectively supercede (the) Congressionally mandated exclusivity (of the Title VII venue provision)." Similar declarations are found in many other cases, even cases found in the District Court for the District of Columbia, that reject the use of pendent venue in Title VII cases. This argument appears not only in Title VII cases but also in cases concerning Americans with Disabilities Act ("ADA") claims and Rehabilitation Act claims, which incorporate the Title VII venue provision.

68 U. CHI. L. REV. at 940-942 (footnotes omitted).

What this discussion demonstrates is that while the analysis courts apply may differ, the result generally does not. Where venue for Title VII claims is improper, courts are reluctant to allow Title VII claims to append to another claim for which venue might be proper. Under a "principle claim" approach, courts recognize that the Title VII claims are almost always the principle claim. See Hayes, 546 F. Supp. at 665. Under a "specialized venue" approach, courts defer to Congress' intent to narrow venue for Title VII claims. See Bartel v. FAA, 617 F. Supp. 190, 198 n.33 (D.D.C. 1985) ("In enacting the special Title VII venue statute Congress deliberately sought to limit the venues in which Title VII actions might be brought. Under such circumstances, the court lacks the authority to ignore the congressional intent to limit venue by finding pendent venue."). Thus, under either approach, plaintiff's Title VII case would belong in Hawaii and all retaliation claims may be litigated there.

Even if the Court somehow finds that venue is proper in the District of Columbia, the case nevertheless should be transferred to the District Court for the District of Hawaii  for the convenience of the parties and witnesses and in the interest of justice.  See Darby v. United States Dep't of Energy, 231 F. Supp.2d 274 (D.D.C. 2002). Under 28 U.S.C. § 1404(a), an action may be transferred from the district in which it is brought, even though that may be a district in which venue could lie pursuant to 42 U.S.C. § 2000e-5(f)(3), for the convenience of the parties and witnesses and in the interests of justice.  See also In re Horseshoe Entertainment, 337 F.3d 429, 435 (5th Cir. 2003) (assuming district where former employee lived at time suit was filed was a possible venue for suit, it was abuse of discretion for district court to deny former employer's motion to transfer venue in employment discrimination case from that district to district where employment records were kept, where the discriminatory acts allegedly occurred, and where the plaintiff would have worked but for the allegedly discriminatory acts), cert. denied, 540 U.S. 1049 (2003); Casarez v. Burlington Northern/Santa Fe Co., 193 F.3d 334, 339 (5th Cir. 1999) (affirming transfer of employment discrimination action, pursuant to § 1404(a) for the convenience of the parties and witnesses and in the interests of justice, to district where, inter alia, majority of fact witnesses lived and personnel files were kept).

Whether to transfer a case to another district involves a "factually analytical, case-by-case determination of convenience and fairness."  SEC v. Savoy Industries, 587 F.2d 1149, 1154 (D.C. Cir. 1978), cert. denied, 440 U.S. 913 (1979).  Consistent with this standard, federal courts have articulated three requirements with respect to such a transfer:  (1) that a judicial district exists in which the case might have been properly brought, (2) that the convenience of the parties and witnesses would be better served in an alternative judicial district, and (3) that the interests

of justice would be better served in an alternative judicial district.  SEC v. Page Airways, Inc.,

464 F. Supp. 461, 463 (D.D.C. 1978).  All three requirements are met in the present action.

First, as shown above, the case could, and should have been brought in the District of

Hawaii, where the relevant employment records are maintained and administered.  See 42

§ 2000e-5(f)(3).[9]  Second, all the events having occurred in Japan, some of the witnesses being

located in Japan, and most of the relevant records being maintained in either Japan or  Hawaii,

the convenience of Defendant and that of the witnesses clearly would be better served if the case

were adjudicated in Hawaii.  Undersigned counsel is informed that Robert B. Nolan and Mark

Nelson, who both signed the Settlement Agreement on the Defendant's behalf, are still employed

by the Defendant in Japan.  Hawaii is significantly nearer to Japan than the District of Columbia.

This Court consistently has transferred actions to alternative judicial districts when the majority

of the witnesses live in or near the transferee forum.  See, e.g., Armco Steel Co., L.P. v. CSX

Corp., 790 F. Supp. 311 (D.D.C. 1991); Securities & Exchange Comm'n v. Ernst & Young, 775

F. Supp. 411 (D.D.C. 1991).

For the same reasons, Plaintiff cannot claim any greater convenience in pursuing the case

in the District of Columbia.  See Stewart v. Capitol Area Permanente Medical Group, 720 F.

Supp. 3, 5 (D.D.C. 1989) (plaintiff's choice of forum is entitled to less weight when that forum is

outside plaintiff's home jurisdiction).  Plaintiff's claims arose in Japan, and the relief he seeks

will not likely be imposed (if at all) in District of Columbia.  See Franklin v. Southern Railway,

Co., 523 F. Supp. 521, 523 (D.D.C. 1981) (where action has little contact with chosen forum,

---

[9]  Defendant acknowledges that the retaliation claim under the ADEA could not have been
brought by itself in Hawaii, but the application of pendent venue principles discussed above would
allow it to be brought in conjunction with the Title VII retaliation claim.

plaintiff's selection is less important); <u>Packer v. Kaiser Foundation Health Plan</u>, 728 F. Supp. 8

(D.D.C. 1989).  <u>See also</u> <u>Hotel Constructors, Inc. v. Seagrave Corp.</u>, 543 F. Supp 1048, 1050

(N.D. Ill. 1982) (citations omitted) ("Although under the common law doctrine of forum non

conveniens, plaintiff's choice of forum was an overriding factor entitled to considerable weight,

the significance of that choice has diminished since the enactment of 28 U.S.C. § 1404(a).

Additionally, plaintiff's choice of forum has reduced value where the forum lacks any significant

contact with the underlying cause of action.").

Finally, the interests of justice would be better served if the case were to be adjudicated in

the District of Hawaii.  The convenience achieved by the transfer also would mean greater

judicial economy for a Hawaii related suit, and the District Court for the District of Hawaii

certainly would be better situated to address Plaintiff's claims for equitable relief.  Given all

these factors, the case should be transferred to the District Court for the District of Hawaii.

## IV.  Conclusion

Plaintiff's Amended Complaint includes a breach of contract claim over which this Court

lacks subject matter jurisdiction and a retaliation claim which was not timely exhausted and for

which venue in D.C. is improper.  Because it appears that the contract claim involves monetary

amounts in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction over Count

One under 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1).  Although venue would be proper in Hawaii

or the Eastern District of Virginia for the retaliation claim pleaded in Count Two, the location of

relevant witnesses and documents favors venue in Hawaii.

In any event, if both claims survive, it is plain that Plaintiff may not proceed in a single

forum with them joined.  Accordingly, this Court should dismiss this case.  Fed. R. Civ. P.

12(b)(1), (3), and (6).  In the alternative, the Court has power to transfer this case to the Court of

Federal Claims under 28 U.S.C. § 1631 or to the United States District Court for the District of

Hawaii for convenience of the parties and the witnesses under 28 U.S.C. § 1404(a) and 42 U.S.C.

§ 2000e-5(f)(3).

      Dated: April 17, 2006.

                                        Respectfully submitted,


                                        /s/_____
                                        KENNETH L. WAINSTEIN, D.C. Bar #451058
                                        United States Attorney


                                        /s/_____
                                        RUDOLPH CONTRERAS, D.C. Bar No.  434122
                                        Assistant United States Attorney

                                        /s/_____
                                        JANE M. LYONS, D.C. Bar #451737
                                        Assistant United States Attorney
                                        Civil Division
                                        555 Fourth Street, N.W., - Room E4822
                                        Washington, D.C. 20530
                                        (202) 514-7161